# THE LAW OFFICES OF
# FAUSTO E. ZAPATA, JR., P.C.

Broadway Chambers Building
277 Broadway, Suite 501
New York, New York 10007

Tel: 212-766-9870 / Fax: 212-766-9869
Email: fz@fzapatalaw.com
Web: www.LaborEmploymentLawFirm.com

August 20, 2025

The Honorable Diane Gujarati
U.S. District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Courtroom 4B South
Brooklyn, New York 11201

Re: Juan Corona Juárez, et al., v. Central Yetev Lev D'Satmar Meat, Inc., EDNY Case No. 21 Civ. 2633

Dear Judge Gujarati,

This office, along with Julien, Mirer, Singla & Goldstein, PLLC, represents the Plaintiffs in the above-referenced matter.

This letter is submitted jointly with attorneys for Defendant Central Yetev Lev D'Satmar Meat, Inc., (hereinafter "Defendant") to obtain approval of a negotiated settlement in a lawsuit involving claims under the Fair Labor Standards Act. Enclosed, please find the proposed Settlement Agreement in connection with the above referenced matter, which is a fair and reasonable settlement for the reasons discussed below. *See*, Exhibit "A" for a copy of the proposed agreement.

This action was commenced under the Fair Labor Standards Act ("FLSA"), and New York Labor Law ("NYLL"). The Plaintiffs allege that the Defendant violated wage and hour laws and that the Defendant owes the Plaintiffs unpaid wages, liquidated damages, and penalties. Defendant has categorically denied and continue to deny that they committed any violations of the FLSA and/or NYLL.

The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]).

Courts have interpreted this limitation to mean that parties may stipulate to dismiss FLSA claims with prejudice, pursuant to FRCP 41, absent the approval of the district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015) (Second Circuit held that F.R.C.P. 41(a)(1)(A)(ii) "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."); *Yunda v. SAFI-G, Inc.*, 2017 U.S. Dist. LEXIS 65088 (S.D.N.Y. 2017) (bifurcated settlements, wherein FLSA claims are submitted to the court for approval, but parallel NYLL claims are not,

is permissible because NYLL parallel claims do not require court approval); *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8(1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 1532007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007); *compare with Gaughan v. Rubenstein*, 2017 U.S. Dist. LEXIS 107042, 2017 WL 2964818 (S.D.N.Y. 2017) (pre-litigation FLSA settlements do not require approval of the district court or the DOL if the plaintiff was represented by counsel); *Samake v. Thunder Lube, Inc.*, 21-102-cv (2d Cir. Jan. 27, 2022) (FLSA settlements must be reviewed for compliance with the FSLA before the parties to the action could dismiss a case, without prejudice, by joint stipulation pursuant to FRCP 41(a)(1)(A)(ii)); *Yunda v. SAFI-G, Inc.*, 2017 U.S. Dist. LEXIS 65088 (S.D.N.Y. 2017) (bifurcated settlements, wherein FLSA claims are submitted to the court for approval, but parallel NYLL claims are not, is permissible because NYLL parallel claims do not require court approval); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007); *compare with Gaughan v. Rubenstein*, 2017 U.S. Dist. LEXIS 107042, 2017 WL 2964818 (S.D.N.Y. 2017) (pre-litigation FLSA settlements do not require approval of the district court or the DOL if the plaintiff was represented by counsel); *Yu v. Hasaki Rest., Inc.*, 944 F.3d 395 (2d Cir. 2019) (holding that "judicial approval is not required of Rule 68(a) offers of judgment settling FLSA claims.")

Courts reviewing motions seeking approval to file a joint a stipulation, pursuant to FRCP 41(a)(1)(A)(ii), dismissing FLSA claims with prejudice must be satisfied that the proposed settlement is "fair and reasonable." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015); *Fisher v. SD Prot. Inc.*, 948 F.3d 593 (2d Cir. 2020) (holding that a district court may approve or reject a settlement of FLSA claims, but may not modify the agreement itself). For a court to find a settlement is fair and reasonable, "the parties must provide enough information for the court to examine the bona fides of the dispute." *Velasquez*, 137 F. Supp. 3d at 584.

To determine whether a settlement is fair and reasonable under the FLSA, courts consider the totality of circumstances, including but not limited to the following factors: "(1) the Plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020), quoting, *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Factors that weigh against a finding that a proposed settlement is fair and reasonable include, "(1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Wolinsky*, 900 F.Supp.2d at 336.

### I.     *Reasonable Possibility of Recovery*
At all relevant times, Defendant owned, operated, or controlled a catering business, which could be broadly divided into three departments, delicatessen, catering, and food delivery.

Plaintiffs were employed in various roles within Defendant's business and initiated this action to recover unpaid overtime and spread of hour wages, damages for inaccurate wage statements and violation of NY's notice and recordkeeping requirements, damages for violation if NY's employee privacy protection laws, and unlawful retaliation in connection with Defendant's actions in terminating the employment of Plaintiffs Sanchez De Los Santos, Ruiz, Miranda Castrejon and Corona Juárez, in July/August 2023 in response to their complaints concerning the underpayment of wages, on their own behalf and on behalf of Plaintiffs De La Cruz, Velazquez, and Duran. Moreover, Defendant also terminated Plaintiffs De La Cruz, Velazquez, and Duran because their coworkers complained on their behalf about being underpaid wages. Other employees who had not engaged in protected acts replaced Plaintiffs them.

As of December 12, 2024, Plaintiffs potential recovery of damages was $808,267.38, broken down as follows:

| Name | NYLL 195(1) | NYLL 195(3) | NYLL 215 | Spread of Hour Hospitality Wage Order | OT | Liquidated | Interest | Total |
|---|---|---|---|---|---|---|---|---|
| Ruiz David | $5,000.00 | $5,000.00 | $20,000.00 | $17,110.25 | $5,694.30 | $22,804.55 | $14,983.38 | **$90,592.47** |
| Corona Juan | $5,000.00 | $5,000.00 | $20,000.00 | $16,428.78 | $5,959.59 | $22,388.37 | $14,983.68 | **$89,760.42** |
| Sanchez Honorio | $5,000.00 | $5,000.00 | $20,000.00 | $13,864.25 | $2,041.47 | $15,905.72 | $10,079.10 | **$71,890.55** |
| Martinez Dario | $5,000.00 | $5,000.00 | $20,000.00 | $16,385.25 | $3,304.82 | $19,690.07 | $12,393.87 | **$81,774.02** |
| Miranda Eulises | $5,000.00 | $5,000.00 | $20,000.00 | $14,142.70 | $1,485.32 | $15,628.02 | $10,094.33 | **$71,350.36** |
| Duran Bertin | $700.00 | $5,000.00 | $20,000.00 | $13,751.00 | $2,580.84 | $16,331.84 | $9,305.54 | **$67,669.22** |
| Velazquez Javier | $5,000.00 | $5,000.00 | $20,000.00 | $12,035.68 | $3,139.28 | $15,174.96 | $9,651.19 | **$70,001.10** |
| Juarez Marcelo | $600.00 | $5,000.00 | | $7,461.00 | $1,556.12 | $9,017.12 | $5,189.64 | **$28,823.88** |
| Sanchez Oliver (Felipe) | $5,000.00 | $5,000.00 | | $13,934.25 | $1,517.46 | $15,451.71 | $9,729.45 | **$50,632.86** |
| Gomez Juan | $600.00 | $5,000.00 | | $11,446.00 | $2,121.66 | $13,567.66 | $7,102.66 | **$39,837.98** |
| Perez Erick | $500.00 | $5,000.00 | | $3,675.00 | $1,453.80 | $5,128.80 | $2,341.16 | **$18,098.76** |
| Jeronimo Jimenez | $600.00 | $5,000.00 | $20,000.00 | $5,985.00 | $1,215.84 | $7,200.84 | $3,257.17 | **$43,258.85** |
| Gonzalez Placido | $700.00 | $5,000.00 | | $3,165.00 | $1,076.18 | $4,241.18 | $1,853.34 | **$16,035.69** |
| Gonzalez Venancio | $5,000.00 | $5,000.00 | | $8,048.75 | $2,204.23 | $10,252.98 | $5,640.78 | **$36,146.74** |
| Garcia Carlos | $550.00 | $5,000.00 | | $1,110.00 | $1,212.16 | $2,322.16 | $907.09 | **$11,101.40** |
| Pastor Carmen | $5,000.00 | $5,000.00 | | $3,044.00 | $1,192.85 | $4,236.85 | $2,819.39 | **$21,293.08** |

| | |
|---|---|
| OT | $37,755.90 |
| SOH | $161,586.90 |

| | |
|---|---|
| Liquidated Damages | $199,342.80 |
| NYLL 195(1) | $49,250.00 |
| NYLL 195(3) | $80,000.00 |
| NYLL 215 | $160,000.00 |
| Interest | $120,331.78 |
| Total | $808,267.38 |

> **II.** *The extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses*

Settling this action allows both parties to avoid the significant burdens and expenses associated with litigation, especially with nineteen plaintiffs involved. These Plaintiffs, residing in different boroughs of New York City and some having moved out of state, would face logistical challenges and costs related to coordinating discovery efforts. Settlement eliminates the need for extensive discovery, such as collecting and reviewing time records, payroll data, and employment documents, as well as preparing for and conducting numerous depositions. This also avoids the costs of hiring expert witnesses to analyze data and provide testimony. Legal research expenses, necessary for developing case strategies and ensuring FLSA compliance, are reduced.

For Defendant, settlement helps avoid the costs of developing defense strategies, such as analyzing exemption classifications and gathering evidence to rebut claims.

Both parties can save on litigation expenses, including court costs, filing fees, and the drafting and arguing of motions. Additionally, the time and resources required for communication, coordination, and trial preparation, such as preparing exhibits and conducting mock examinations, are minimized.

> **III.** *The seriousness, magnitude, and complexities of the litigation risks faced by the parties*

In an FLSA action involving nineteen Plaintiffs, the litigation risks for both parties are significant. Plaintiffs face financial risks, including high discovery costs and coordinating depositions across various locations, especially with some Plaintiffs out of state. They also risk no recovery, lower recovery, or delayed recovery due to the Defendant's resources to litigate through the appeals process. Legally, Plaintiffs must prove consistent violations across all Plaintiffs, with potential unfavorable precedents affecting future claims. Logistically, managing communication and strategy among a dispersed group adds complexity.

For Defendant, financial risks involve substantial legal fees and potential large settlements or judgments. They acknowledge the inherent uncertainty of litigation and the potential exposure in this case. Reputationally, negative publicity from a high-profile case can impact employee morale and public perception. Overall, both parties face a drain on time and resources, with the unpredictability of trial outcomes and potential appeals prolonging resolution and increasing costs.

These risks underscore the seriousness of the litigation, making settlement an attractive option to mitigate potential negative outcomes.

> **IV.** *Whether the settlement agreement is the product of arm's-length bargaining between experienced counsel*

4

      The settlement agreement resulted from arm's-length bargaining between highly experienced counsel. Defendant's counsel, Weinberger, has practiced labor and employment law for over 35 years since being admitted to the New York State Bar in 1983. Plaintiffs' counsel, admitted in 2002, has specialized in labor and employment law since then. The parties participated in mediation sessions on December 27, 2021, and August 21, 2023, with a settlement conference on May 14, 2024, facilitated by Magistrate Bulsara. Magistrate Bulsara assisted the parties in identifying their positions' strengths and weaknesses, the risks inherent in litigation, and the potential duration and costs. This guidance led to a reasoned decision to settle, considering the uncertainties of litigation and the likelihood that legal fees for Defendant's defense through a dispositive motion or trial would exceed the settlement amount. The parties were unable to file their Cheeks motion in December 2024 because three plaintiffs, Brendi Aguilar, Wendy Aguilar, and Ludin Morales ceased cooperating in the prosecution of their case and our office moved to be relieved as counsel of record; the Court granted this motion on May 5, 2025.

      The agreement was translated into Spanish, Plaintiffs' primary language and provided to them for their review prior to executing the agreement. *See* Exhibit "B".

### V.   *Possibility of fraud or collusion*

      While the Second Circuit has not directly addressed the possibility of fraud or collusion in the context of a Cheeks motion, District Courts analyzing the issue have focused on several factors that support finding a lack of fraud or collusion, including whether: (1) the material terms of the settlement were reached during a court-supervised conference; (2) the terms were established through mediation with an experienced mediator; (3) participation in a District Court sponsored alternative dispute resolution program; (4) the settlement amount closely matched the claimed unpaid wages; (5) the court proposed the settlement terms; (6) Plaintiffs' counsel engaged in extensive litigation efforts to maximize recovery; (7) Plaintiffs' counsel received fees on a pro rata basis alongside the plaintiff; and (8) the settlement terms were reasonable and reflected good faith efforts to resolve the FLSA claims, as demonstrated by compromises on the parties' respective positions. *Redwood v. Cassway Contracting Corp.*, 16 Civ. 3502 (HBP), at *7 (S.D.N.Y. Oct. 18, 2017) ("The material terms of the settlement were reached at the settlement conference. This fact further negates the possibility of fraud or collusion."); *Williams v. Magic Mgmt., LLC*, 16 Civ. 9834 (HBP), at *6 (S.D.N.Y. Oct. 24, 2017) ("The settlement was reached after a mediation before the Court, further negating the possibility of fraud or collusion"); *Monica v. Deals On Broadway Corp.*, 18 Civ. 1342 (HBP), at *5-6 (S.D.N.Y. Jan. 18, 2019) ("The fact that the gross settlement amount is almost equal to the total amount of claimed unpaid wages and overtime is circumstantial evidence that the settlement was not the product of collusion between counsel or any other misconduct"); *Paul v. Roman Catholic Archdiocese of N.Y.*, 18 Civ. 2 (HBP), at *5 (S.D.N.Y. Mar. 22, 2019) ("The fact that… [the Court] suggested the settlement terms conclusively negates the possibility of fraud or collusion"); *Chun Lan Guan v. Long Island Bus. Instute, Inc.*, 15-CV-02215 (CBA) (VMS), at *5 (E.D.N.Y. Mar. 18, 2020) ("the settlement was reached after years of vigorous litigation and successful attempts by Plaintiffs' counsel to increase the settlement recovery for their clients, thereby reducing the risk of collusion between the parties"); *Hernandez v. Anjost Corp.*, No. 11 Civ. 1531 (AT), 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive"); *Rojas v. Three Decker Rest., Ltd.*, 19-cv-8592 (LJL), at *2 (S.D.N.Y. June 15, 2020) ("There is no

evidence of fraud or collusion. Importantly, while the settlement will be paid out over time and in installments, Plaintiff will receive her portion of the settlement pro rata with her counsel"); *Xin Huang v. Sunstone Pathology Servs. PC*, 23-cv-05420 (JMW), at *6 (E.D.N.Y. Aug. 26, 2024) ("there is no indicia, nor is there even a suggestion to the Court, that the settlement is a product of fraud, coercion, or collusion. Indeed, the settlement arose only after extensive mediation discussions in April 2024 with the assistance of an E.D.N.Y. mediator"); *Bedasie v. Mr. Z Towing, Inc.*, 13 CV 5453 (CLP), at *5 (E.D.N.Y. Jan. 9, 2018) ("the parties reached the Agreement only after they participated in mediation as part of the Second Circuit's Civil Appeals Mediation Program ("CAMP"). See 2d Cir. L. R. 33.1. Participation in that program further demonstrates that the Agreement is the product of arm's-length negotiation and greatly reduces the possibility of fraud or collusion.")

Here, the parties agreed to settle Plaintiffs' claims and withdraw National Labor Relation Board Charges for $397,284.96, payable in six installments as shown below.

| First Name | Last Name | Total Net |
|---|---|---|
| David | Ruiz | $29,422.38 |
| Juan | Corona | $29,079.30 |
| Honorio | Sanchez | $23,434.48 |
| Dario | Martinez | $26,588.76 |
| Eulises | Miranda | $23,264.42 |
| Bertin | Duran | $22,006.61 |
| Javier | Velazquez | $22,832.18 |
| Marcelo | Juarez | $9,295.27 |
| Oliver | Sanchez Camacho | $16,341.36 |
| Juan | Gomez | $12,804.86 |
| Erick | Perez | $5,856.17 |
| Jeronimo | Juarez | $14,191.58 |
| Placido | Gonzalez | $5,200.81 |
| Venancio | Gonzalez | $11,696.98 |
| Carlos | Garcia | $3,623.88 |
| Carmen | Pastor | $6,959.06 |
|  |  |  |
| The Law Offices of Fausto E. Zapata, Jr., P.C. |  | $69,037.32 |
| Julien, Mirer, Singla & Goldstein PLLC |  | $65,649.54 |
|  | Total | $397,284.96 |

Here, the parties were represented by experienced counsel who vigorously litigated the plaintiffs' claims. Moreover, the parties were referred to the Alternative Dispute Resolution Program of the E.D.N.Y. and participated in mediation in 2021 and 2023 without success. In 2024, they participated in a court-supervised settlement conference before arriving at an agreement to resolve the FLSA claims, reflecting a compromise in positions. Finally, the Plaintiffs' counsel's legal fees are being paid on an installment, pro rata basis.

## VI. Legal Fee

Under the Fair Labor Standards Act, a prevailing plaintiff is entitled to an award of reasonable attorneys' fees. 29 U.S.C. § 216(b).

The question of attorneys' fees arises in three contexts: (1) applications following a ruling in favor of the plaintiff; (2) following a settlement where the agreement reserves the question of fees and costs for the court to decide; (3) settlement incorporating attorneys' fees and costs into the settlement amount. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 601 (2d Cir. 2020).

In the context of an FLSA settlements, courts must assess the reasonableness of attorney's fees to ensure that fees are fair and do not conflict with the employee's recovery. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012); *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020), *citing, Cheeks*, 796 F.3d at 206 ("In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs").

"In an individual FLSA action where the parties settled on the fee through negotiation, there is 'a greater range of reasonableness for approving attorney's fees.'" *Wolinsky*, 900 F. Supp. 2d at 336 (quoting *Misiewicz v. D'Onofrio Gen. Contractors Corp.*, No. 08 Civ. 4377, 2010 WL 2545439, at *5 (E.D.N.Y. May 17, 2010), *report and recommendation adopted*, 2010 WL 2545472 (E.D.N.Y. June 18, 2010)).

### A. *Contingency Fee*

The Second Circuit favors the percentage-of-the-fund method of calculating attorney's fees because it "directly aligns the interests of [Plaintiff] and [his] counsel." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). Contingency fees of one-third in FLSA cases are routinely approved in this Circuit. *Gonzales v. 27 W.H. Bake, LLC*, No. 15 Civ. 4161, 2018 WL 1918623, at *4 (S.D.N.Y. Apr. 20, 2018) (collecting cases). As a check on the reasonableness of attorney's fees, however, courts still calculate the total cost of an attorney's hours billed, previously known as the lodestar method. *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302, 2010 WL 363113, at *23 (S.D.N.Y. Feb. 1, 2010); *Dunbar v. 4399 Bronx Chicken LLC*, 20 Civ. 7884 (AT), at *4 (S.D.N.Y. June 9, 2021).

### B. *Lodestar Method*

Courts in this Circuit use the lodestar method to determine the reasonableness of attorney's fees sought in FLSA cases by scrutinizing the fee petition to ascertain the number of reasonably billed hours and then multiplying that figure by a reasonable hourly rate based on the "prevailing [hourly rate] in the community . . . where the district court sits.'" *Dominguez v. 322 Rest. Corp.*, No. 14-CV-3643 (RA), at *2 (S.D.N.Y. May 9, 2019), *citing, Arbor Hill Concerned Citizens v. County of Albany*, 484 F.3d 162 (2d Cir. 2007). "Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors. Cowan v. Ernest Codelia, P.C., 2001 WL 30501 at

*7; Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999)." *Palmero v. EY Sales Corp.*, 19 CV 2679 (ARR) (CLP), at *6 (E.D.N.Y. June 22, 2020).

### C. Cross Check Contingency Fee

"The last step of the analysis is to cross-check the fee award against the lodestar multiplier." *James v. China Grill Mgmt., Inc.*, 18 Civ. 455 (LGS), at *5 (S.D.N.Y. Apr. 30, 2019). The lodestar multiplier is calculated by dividing the fee award by the lodestar (the reasonable hours billed multiplied by a reasonable hourly rate)." *Id.* At this stage, "'the district court may, in its discretion, increase the lodestar by applying a multiplier based on "other less objective factors," such as the risk of the litigation and the performance of the attorneys.'" *Ortiz v. Chop't Creative Salad Co. LLC*, 89 F. Supp. 3d 573, 590-591 (S.D.N.Y. 2015).

District Courts in this Circuit routinely award hourly attorney fee rates ranging from approximately $175 to $500—depending on experience—for attorneys working on FLSA litigation. *See Calicia v. T&H Village Food Corp d/b/a Village Diner, et al.*, 12 Civ. 3150 (E.D.N.Y. 2012) (in this case, Plaintiffs' counsel was awarded approximately $500 an hour in an FLSA case); *Kahlil v. Original Old Homestead Rest.*, 657 F. Supp. 2d 470, 476 (S.D.N.Y. 2009) (awarding hourly rate of $400 for a "senior lawyer with 25 years experience"); *Ferrara v. CMR Contracting, LLC*, 848 F. Supp. 2d 304, 313 (E.D.N.Y. 2012) ("In recent years, courts in this district have approved hourly fee rates in the range of $200 to $450 for partners, $100 to $300 for associates and $70 to $100 for paralegal assistants"); *Toussie v. County of Suffolk*, 2011 U.S. Dist. LEXIS 58179, 2011 WL 2173870, at *2 (E.D.N.Y. May 31, 2011) (awarding $400 to an attorney with 7 years experience); *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507-08 (S.D.N.Y. 2012) (awarding fees to Plaintiffs' counsel's firm at rates of $175/hour for associate work and $350/hour for partner work); *Wong v. Hunda Glass Corp.*, No. 09-CV-4402, 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010).

### D. Contingency Fee Cross-Checked Against Lodestar

Instead of using the lodestar method, courts may employ the "percentage of the fund" method. *See, McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable. *Romero v. Westbury Jeep Chrysler Dodge, Inc.*, No. 15 CV 4145, 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016) (citing cases). However, a one-third percentage may be "simply too great" in relation to the work performed. *Larrea v. FPC Coffees Realty Co.*, No. 15 CV 1515, 2017 WL 1857246, at *6 (S.D.N.Y. May 5, 2017) (declining to approve a one-third fee that would result in an 11.4 multiplier of the lodestar calculation).

Some courts in the Second Circuit addressing the issue have ruled that a multiplier of 2, in most cases, sufficiently compensates plaintiff lawyers for risks associated with FLSA cases. *Palmero v. EY Sales Corp.*, 19 CV 2679 (ARR) (CLP), at *6 (E.D.N.Y. June 22, 2020), *citing, Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014); *Garcia v. B'Above Worldwide Inst.*, 21 CV 7127 (WFK) (CLP), at *7 (E.D.N.Y. July 26, 2022); Zhu v. Meo Japanese Grill & Sushi Inc., 17 CV 3521 (CLP), at *1 (E.D.N.Y. Oct. 6, 2021).

Other courts in the Second Circuit have held that multipliers from two to six times the lodestar are reasonable. *Cohan v. Columbia Sussex Mgmt., LLC*, CV 12-3203 (AKT), at *11 (E.D.N.Y. Sep. 28, 2018); *Ramirez v. Addy Hosp.*, 2:21-cv-03768 (JMW), at *10 (E.D.N.Y. Oct. 17, 2022); *Monserrate v. Tequipment, Inc.*, No. 11-CV-6090 (RML), 2012 WL 5830557, at *3 (E.D.N.Y. Nov. 16, 2012) ("Courts regularly award multipliers from two to six times the

lodestar"); *Escobar v. Variedades Belen Corp.*, 23-CV-04849 (JMW), at *11 (E.D.N.Y. Mar. 25, 2024) ("While the amount Plaintiff seeks under the percentage method is about double than the amount calculated under the lodestar method, "[c]ourts regularly award lodestar multipliers from two to six times lodestar.""); *Ruiz v. Map Foods Inc.*, 24-CV-02257 (JMW) (E.D.N.Y. Sep. 30, 2024); *Pernal v. ProFlame Inc.*, 21 CV 4526 (JMW), at *12 (E.D.N.Y. Nov. 2, 2022); *Villegas v. Jorge's Rest. Corp.*, 23-CV-01492 (HG), at *5 (E.D.N.Y. Apr. 24, 2024); *Arsenal v. Star Nissan, Inc.*, 23-CV-06631 (HG), at *5 (E.D.N.Y. Apr. 8, 2024); *Garcia v. Johnnie's Car Wash on Oak Inc.*, 22-CV-02403 (LDH) (JMW), at *8 (E.D.N.Y. Nov. 27, 2022).

### E. *Public Policy Considerations: Where Lodestar Method is Less than 1/3*

Courts have declined to apply the lodestar cross check because of the view that it would have no bearing on the reasonableness of attorneys fees in cases where performing the lodestar method results in attorneys fees significantly less than 1/3 contingency fee that was agreed to between the client(s) and the attorney. *Wynne v. City of New York*, 23 Civ. 9955 (DEH) (GWG), at *6 (S.D.N.Y. Dec. 10, 2024) ("Here, by contrast, each of the plaintiffs and their attorneys agreed in advance of the settlement that the attorneys would be entitled to one-third of any recovery as attorneys' fees no matter the outcome of the lawsuit. The purpose of a contractual contingency fee arrangement is to ensure recovery for an attorney regardless of the number of hours actually expended by the attorney… In other words, attorneys who take on FLSA cases on contingency bear the risk of having to litigate cases in which the recovery may not adequately compensate them for the time they expended.")

### F. *Public Policy Considerations: Proportionality of Legal Fee*

The Second Circuit has held "[n]either the text nor the purpose of the FLSA, however, supports imposing a proportionality limit on recoverable attorneys' fees. With respect to the statutory text, FLSA simply provides for a 'reasonable attorney's fee to be paid by the defendant'… Nothing in this clause or the surrounding text provides for the conclusion that a 'reasonable attorneys fee must be a 'proportional' fee." *Fisher*, 948 F.3d at 603 (finding that limiting attorneys' fees to 33% of total settlement contravenes the FLSA, a uniquely protective statute, because attorneys would be discouraged from litigating low value cases and these plaintiffs would be left with little legal recourse.)

### G. *Fee Application*

"When presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." *Fisher*, 948 F.3d at 606.

### H. *Experience and Hourly Rate*

I am the founder of The Law Offices of Fausto E. Zapata, Jr., P.C., a small firm in Manhattan, founded in 2005, that has almost exclusively represented individual plaintiffs in a wide range of labor and employment issues from the inception of the firm. Moreover, I have 22 years of experience in the field of labor and employment law and, to that end, I have litigated a variety of labor and employment matters in both Federal and New York State courts.

My hourly rate of $550 is reasonable because I was admitted to the New York State Bar in 2002 and have focused on labor and employment law since that time. Since that time, I have successfully handled numerous wage and hour matters ranging from individual claims to actions

involving over 400 plaintiffs. *See, . Placido Escoto v. Allerton Realty Group LLC, et al.*, 22 Civ. 8722 (S.D.N.Y., September 16, 2024) ("[a]s to Zapata, Jr., the Court finds that the hourly rate of $500 is reasonable… Zapata, Jr.'s hourly rate is commensurate with other similarly-experienced partners in the field."). Since 2002, I have successfully handled numerous wage and hour matters ranging from individual claims to actions involving over 400 plaintiffs. *See, Ramos v. The City of New York*, 13 Civ. 9225 (S.D.N.Y. July 16, 2015); *Sanchez v. Metro Terminals Corp.*, et al., 10 Civ. 1645 (E.D.N.Y. October 12, 2010); *Olga Quintana v. United Building Maintenance Associates, Inc.*, 11 Civ. 5708 (S.D.N.Y. March 15, 2012); *Stephens v. The City of New York, et al.*, 13 Civ. 2364 (S.D.N.Y. November 8, 2013); *Carmen Maidana v. La Esquina Criolla Restaurant, Inc.*, et al., 11 Civ. 2606 (E.D.N.Y. November 14, 2013); *David R. Kozlow v. The City of New York, et al.*, 13 Civ. 8017 (S.D.N.Y. February 7, 2014); *Garrison Scott v. Charlex, Inc., and GEP Commpay Services*, LLC, 13 Civ. 6436 (S.D.N.Y. February 27, 2014); *Jehle v. The Christophers, et al.*, 14 Civ. 2284 (S.D.N.Y. September 5, 2014); *Ozpinar, et al. v. L & G Delite, LLC*, et al., 13 Civ. 7368 (E.D.N.Y. January 15, 2016); *Harry Azcona v. Binlinguals, Inc.*, E.D.N.Y. Case No. 15 Civ. 6025 (E.D.N.Y. June 16, 2016) *Stradford v. Cohen & Steers Capital Management, Inc.*, 17 Civ. 2383 (S.D.N.Y. October 13, 2017); *Carlos Lopez v. PHM Realty, LLC*, 16 Civ. 7625 (S.D.N.Y. March 1, 2018); *Zapeta, et al., v. Xolle Demo, LLC*, Case No. 17 Civ. 03998 (E.D.N.Y. April 23, 2018); *Phyllis Minunni-Deebs v. Richmond University Hospital*, E.D.N.Y. Case No. 17 Civ. 6239 (E.D.N.Y. May 1, 2018); *Perez v. Cohen & Steers Capital Management, Inc.*, S.D.N.Y. Case No. 17 Civ. 09195 (S.D.N.Y. May 1, 2018); *Alexandra Ramos v. v. Karen Garden Apartment, Corp., et al.*, E.D.N.Y. Case No. 18 Civ. 775 (E.D.N.Y. October 10, 2018); *Garrison Scott v. Zabar's & Co., Inc.*, 17 Civ. 5942 (S.D.N.Y. November 29, 2018); *Jose Gomez v. Natures Way Foods Corp., et al.*, E.D.N.Y. Case No. 19 Civ. 1440 (E.D.N.Y October 21, 2019); *Jose Ramirez v. M.L. San Jose Enterprises, Corp. (d/b/a Liberato Restaurant)*, 19 Civ. 3429 (S.D.N.Y. March 25, 2021); *Abel Vera et al. v. HK Kitchen Corp.*, 20 Civ. 8204 (S.D.N.Y. June 17, 2021); *Miguel DeJesus v. 2078 Arthur LLC, et al.*, 20 Civ. 02030 (S.D.N.Y. June 21, 2021); *King v. Regen Medical Management, LLC, et al.*, 20 Civ. 6050 (S.D.N.Y. December 10, 2021); *Rafael Sanchez v. Vaelntine2400 LLC, et seq.*, E.D.N.Y. Case No. 21 Civ. 4942 (E.D.N.Y. September 29, 2022); *Gustavo Marin v. 4-10 Bogardus Corp. and Metro Management & Development, Inc.*, 24 Civ. 5495 (S.D.N.Y., January 2, 2025); *Julius Feinstein v. Most Media USA, Inc., et al.*, New York County Index No. 161446/2018, Dkt. No. 163.

  Here, I worked 458 hours and incurred $3,387.78 in out-of-pocket expenses in prosecuting Plaintiffs' FLSA claims. *See*, Exhibit "C" for a copy of billing. Under the terms of our retainer agreement, our office agreed to pay the filing fees, expert witnesses, and other customary litigation costs from any amount recovered.  Plaintiffs would have no financial obligations to repay any of the costs/fees if Plaintiffs did not recover damages in this action. See, Exhibit "D" for a copy of the retainer agreement that Juan Corona signed, which is identical to the retainer that all the other plaintiffs signed.

  I have reviewed our office's billing records and confirmed that time/resources devoted to this matter were reasonably and necessarily performed to litigate this matter effectively. I have acted as the lead counsel responsible for the prosecution of this action and also maintained contemporaneous time records reflecting the time spent on this matter.  See, Exhibit "E" for a copy of the aforementioned.

  **I.**  ***Results Achieved***

Plaintiffs' FLSA unpaid wage claims had a value of $43,026.77 and an equal amount in liquidated damages. All of Plaintiffs' other damages were for non-FLSA claims; hence, not subject to Cheeks scrutiny.

In any case, Plaintiffs' total damages, assuming that Plaintiffs prevailed on all of their wage claims, i.e., FLSA and NYLL unpaid overtime wages and unpaid spread of hour pay, the total damages would have been $215,651.36, or $431,302.72 with liquidated damages. The rest of Plaintiffs' damages relate to retaliation claims under N.Y. Labor Law § 215 or technical violations of N.Y. Labor Law §§ 195(1) and 195(3), which have been challenged on grounds that these claims are insufficient to confer Article III standing because they are technical violation claims without actual injuries. *Perez v. Postgraduate Ctr. For Mental Health*, 19-CV-0931(EK)(PK) (E.D.N.Y. Aug. 18, 2021) (court concluded that Article III jurisdiction was lacking for NYLL § 195(3) claims because of lack of injury in fact and supporting of concrete injury and particularized allegations); *You Qing Wang v. XBB, Inc.*, 18-CV-7341 (PKC) (ST), at *24 (E.D.N.Y. Mar. 29, 2022) ("Technical statutory violations that do not lead "to either a tangible injury or something akin to a traditional cause of action, " cannot confer Article III standing in federal court."); *Sevilla v. House of Salads One LLC,* No. 20 Civ. 6072, 2022 WL 954740 (E.D.N.Y. Mar. 30, 2022) (Chen, J.) ( "[t]echnical statutory violations that do not lead to either a tangible injury or something akin to a traditional cause of action cannot sustain Article III standing in federal court."); *see also TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2205 (2021); *Francisco v. NY Tex Care, Inc.*, No. 19 Civ. 1649 (PKC)(ST), 2022 L 900603, at *1 (E.D.N.Y. Mar. 28, 2022) (regarding wage statements); *Wang v. XBB, Inc.*, No. 18 Civ. 7341 (PKC)(ST), 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) (regarding notices).

Here, Counsel for Plaintiffs achieved results support the application for legal fees because the amount recovered, $397,284.96, including attorneys' fees and costs, greatly exceed the total amount that Plaintiffs could have recovered under the FLSA, i.e., $37,755.90 or $75,511.80 with liquidated damages.

### J. *Cross-Check*

Here, Plaintiffs' counsel and Plaintiffs agreed that Plaintiffs' counsel would fund the litigation and would receive the greater of either: (1) a contingency of 33% of the gross recovery amount, including statutory attorney's fees, in this case $140,857.51 after first deducting costs and expenses from the gross recovery amount, in this case $2,427.43; or, (2) statutory attorneys' fees only. Additionally, the retainer agreement provided that if Plaintiffs did not prevail, then Plaintiffs would not have to pay our office any legal fees or our services in connection with prosecuting the instant matter.

The legal fees here would result in a multiplier in the range of .56. One court found that "[i]n recent years multipliers of between 3 and 4.5 have become common" and described 2.09 as "at the lower end of the range of multipliers awarded by courts within the Second Circuit." *In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002); *see also Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (finding multiplier of 4.65 "well within the range awarded by courts in this Circuit and courts throughout the country"); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) ("In this Court's opinion, a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases. The plaintiffs' bar is presumably selective enough with the cases they take on to win a recovery in at least half of them. A multiplier near 2 compensates them appropriately").

At this time, Defendant takes no position with respect to Plaintiffs' counsels' request for attorneys' fees. On this basis, the parties agree that this settlement is an equitable resolution to the instant matter.

Very truly yours,

Fausto E. Zapata, Jr.